IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES BATSON,                              07-CV-217-BR

          Plaintiff,                       OPINION AND ORDER

v.

MICHAEL ASTRUE, Commissioner
of Social Security,

          Defendant.

BRUCE W. BREWER
419 Fifth Street
Oregon City, OR 97045
(503)722-8833

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1158

1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

       Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff James Batson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Plaintiff seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the decision of the Commissioner.


## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on November 2, 1998, alleging a disability onset date of October 27, 1998.  Tr. 14.[1]

---

     [1] Citations to the official transcript of record filed by the Commissioner on July 3, 2007, are referred to as "Tr."

2 - OPINION AND ORDER

The application was denied initially and on reconsideration. Tr. 14.  An Administrative Law Judge (ALJ) held a hearing on October 4, 1999.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 33-58.

The ALJ issued a decision on October 22, 1999, in which he found Plaintiff was not disabled.  Tr. 14-27.  Ultimately, Plaintiff appealed the matter to this Court.  On April 2, 2002, the Honorable John P. Cooney issued an Opinion and Order affirming the ALJ's October 22, 1999, decision.  The Ninth Circuit affirmed this Court's decision.  *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004).

On June 12, 2000, Plaintiff filed a second application for DIB again alleging a disability onset date of October 27, 1998. Plaintiff's second application was denied initially and on reconsideration.  Tr. 207.  An ALJ held a hearing on August 15, 2002.  At the hearing, Plaintiff was represented by an attorney and amended the alleged onset date of his disability to October 23, 1999, which is the day after the previous ALJ's decision.  Tr. 242.  Plaintiff and a VE testified at the hearing. Tr. 238-62.

The ALJ issued a decision on August 30, 2002, in which he found Plaintiff was not disabled.  Tr. 532-41.  On March 15, 2004, the Appeals Council denied Plaintiff's request for review,

3 - OPINION AND ORDER

and the ALJ's decision became the final decision of the
Commissioner.  Tr. 221-23.  Plaintiff appealed the matter to this
Court.  On May 16, 2005, the Honorable Garr M. King issued an
Order reversing and remanding the ALJ's decision for further
administrative proceedings pursuant to stipulation of the
parties.  Tr. 583-84.  The Court directed the ALJ to conduct a
*de novo* hearing to consider all of the medical and nonmedical
evidence.

On November 1, 2005, the ALJ held a hearing on remand.
Tr. 263-92.  At the hearing, Plaintiff was represented by an
attorney.  Plaintiff and a VE testified.  On December 30, 2005,
the ALJ issued a decision in which he found Plaintiff was not
disabled before his December 31, 2003, date last insured.  On
December 11, 2006, the Appeals Council denied Plaintiff's request
for review, and the ALJ's decision became the final decision of
the Commissioner.  Tr. 192-94.


## BACKGROUND

Plaintiff was born on June 30, 1950; was 55 years old at the
time of the last hearing; and was 53 years old on December 31,
2003, the date his insured status expired.  Tr. 209.  Plaintiff
completed high school.  Tr. 15.  Plaintiff has past relevant work
experience as a "territory manager/sales representative of meat
products companies."  Tr. 219.

4 - OPINION AND ORDER

Plaintiff alleges disability due to degenerative disc disease, sleep apnea, depression, and a heart condition. Tr. 213, 219.

The ALJ acknowledged on remand that Plaintiff has the severe impairments of degenerative disc disease, sleep apnea, and depression.  Tr. 219.  The ALJ, however, concluded Plaintiff's heart condition was not severe.  Tr. 213.

The ALJ denied benefits to Plaintiff on the ground that Plaintiff retains the residual functional capacity (RFC) to perform a range of jobs such as assembly/production worker that would not involve hazardous working conditions such as being around moving machinery and that exist in significant numbers in the national economy through Plaintiff's date last insured. Tr. 220.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence on remand.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence on remand.  *See* Tr. 209-13.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson*, 359 F.3d at 1193. "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the

6 – OPINION AND ORDER

Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments,

known as Listings, are enumerated in 20 C.F.R. part 404,
subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284
n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at
the heart of Steps Four and Five of the sequential analysis
engaged in by the ALJ when determining whether a claimant can
still work despite severe medical impairments.  An improper
evaluation of the claimant's ability to perform specific work-
related functions "could make the difference between a finding of
'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also*
20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff did not engage in substantial gainful activity from October 23, 1999, through December 31, 2003, the date on which his disability insured status expired. Tr. 219.

At Step Two, the ALJ found Plaintiff has severe impairments of degenerative disc disease, sleep apnea, and depression. Tr. 219.

At Step Three, the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment set out in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ assessed Plaintiff's RFC through his date last insured and found Plaintiff

was able to stand for "one hour at a time with no overall limit" and to walk for four blocks on a level surface "at one time with no overall limit"; to sit for one hour "at a time with no overall limit"; and to operate a car for 15 minutes at a time "with no overall limit." Tr. 219. The ALJ also found Plaintiff has moderate impairments in memory and concentration and in the use of his hands for fine manipulation. The ALJ concluded Plaintiff should have only occasional interaction with the public. Tr. 219. Finally, the ALJ found Plaintiff was precluded from work that requires exposure to hazardous environments, including exposure to moving machinery or unprotected heights. Tr. 219.

At Step Four, the ALJ found Plaintiff was not able to perform his past relevant work through his date last insured. Tr. 219.

At Step Five, the ALJ found Plaintiff was capable on or before December 31, 2003, of working in occupations that existed in significant numbers in the local and national economies. Tr. 220. Accordingly, the ALJ concluded Plaintiff was not disabled as of December 31, 2003, his last date insured, and, therefore, Plaintiff is not entitled to benefits. Tr. 220.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found at Step Two that Plaintiff's heart condition was nonsevere;

10 - OPINION AND ORDER

(2) improperly rejected Plaintiff's testimony; (3) improperly rejected the opinion of Erik Blake, M.D., and partly rejected the opinion of J. David Hook, M.D., Plaintiff's examining physicians; and (5) accepted testimony of the VE that is directly contradicted by information contained in the Dictionary of Occupational Titles (DOT).

**I.  The ALJ did not err at Step Two when he found Plaintiff's heart condition was nonsevere.**

As noted, the ALJ found at Step Two that Plaintiff has severe impairments of degenerative disc disease, sleep apnea, and depression.  Plaintiff, however, contends the ALJ erred when he found Plaintiff's heart condition was nonsevere.

At Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments that would limit the claimant's ability to perform work-related activities for a period of at least 12 continuous months.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ, however, must "ha[ve] substantial evidence to find that . . . medical evidence clearly establishe[s a claimant does] not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here the ALJ noted Plaintiff suffered a myocardial infarction in November 2002 and underwent angioplasty and stenting of the circumflex artery.  The ALJ pointed out, however,

11 - OPINION AND ORDER

that in January 2003 Plaintiff's echocardiogram was normal.
Tr. 723.  The ALJ also noted the record does not reflect
Plaintiff's heart condition resulted in more than minimal
limitations on his ability to perform work-related activities
for a period of at least 12 months before his date last insured
of December 31, 2003.  Moreover, in an April 2004 follow-up
examination with Rebecca Christensen, M.D., Plaintiff also
reported he was doing well regarding his heart condition.
Tr. 729.  Dr. Christensen urged Plaintiff to stop smoking and
recommended Plaintiff return in a year for a recheck.  Tr. 729-
30.

     The Court concludes on this record that the ALJ did not err
when he found at Step Two that Plaintiff's heart condition was
nonsevere because he gave clear and convincing reasons based on
substantial evidence in the record for doing so.

**II.  The ALJ did not err when he rejected Plaintiff's testimony.**

     Plaintiff alleges the ALJ erred when he failed to give clear
and convincing reasons for rejecting Plaintiff's testimony.

     In *Cotton v. Bowen,* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th

Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

As noted, the ALJ found Plaintiff produced objective medical evidence of the severe impairments of degenerative disc disease, sleep apnea, and depression.  The ALJ, however, found Plaintiff's testimony about the intensity and limiting effects of his symptoms on or before December 31, 2003, was not entirely credible.

To support his conclusion, the ALJ noted Bradley Bergquist, M.D., examining physician, opined Plaintiff's "symptoms are so graphic and expansive . . . that I don't think one can explain them on a physical basis."  Tr. 139.  Dr. Bergquist pointed out that "inconsistencies" between Plaintiff's described limitations and his performance during the examination, including Plaintiff's

13 - OPINION AND ORDER

alleged "near lack of neck range of motion . . . during testing, as opposed to directly observed greater range of motion during dressing and undressing." Tr. 139. In addition, Dr. Bergquist found Plaintiff's "hands strongly suggested his activity level is greater than he states that it is." Tr. 139.

The ALJ also relied on Dr. Hook's findings of inconsistency arising from his examination of Plaintiff in February 2001: Dr. Hook reported Plaintiff's actual range of motion when distracted exceeded his claimed range of motion. Tr. 492. Although Plaintiff stated he used a cane because he was afraid of falling, Dr. Hook noted the cane "serves as a sort of accessory in [Plaintiff's] gait" and Plaintiff did not appear to use the cane for weightbearing or balance. Tr. 492. Dr. Hook also found Plaintiff "presents with a largely invalid examination, and there are no clear deficits noted in the examination." Tr. 494. Dr. Hook concluded Plaintiff's limitations are likely the result of deconditioning. Tr. 497.

On this record, the Court finds the ALJ did not err when he found Plaintiff's testimony not entirely credible as to the intensity, persistence, and limiting effects of his conditions because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not reject Dr. Blake's opinion nor partially reject Dr. Hook's opinion.**

Plaintiff contends the ALJ improperly rejected Dr. Blake's

14 - OPINION AND ORDER

opinion that Plaintiff was disabled, could sit for less than four hours, and stand for less than two hours in an eight-hour work day and also improperly rejected that portion of Dr. Hook's February 2001 opinion in which he opined "the opportunity [for Plaintiff] to alternate between standing and sitting might make him more comfortable."  To support his position, Plaintiff asserts the ALJ omitted these limitations in his hypothetical to the VE.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining

15 - OPINION AND ORDER

physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

**A.    Dr. Blake's Opinion**

The ALJ noted Dr. Blake based his opinion on Plaintiff's subjective complaints and a presumed diagnosis of osteoarthritis as well as probable carpal-tunnel syndrome and plantar fasciitis. The Court, however, earlier concluded the ALJ properly rejected Plaintiff's testimony about his subjective complaints. In addition, as the ALJ noted, x-rays obtained after Dr. Blake's examination do not reflect osteoarthritis. In addition, Dr. Hook concluded his examination of Plaintiff did not support a diagnosis of either carpal-tunnel syndrome or plantar fasciitis.

The Court, therefore, concludes the ALJ did not err when he rejected Dr. Blake's opinion because the ALJ provided clear and convincing reasons supported by the record for doing so.

**B.    Dr. Hook's Opinion**

At the November 1, 2005, hearing, the ALJ included in his hypothetical to the VE the limitation that Plaintiff could

sit and stand for one hour at a time without any overall limit on
the number of times he could sit and stand in a day and that
Plaintiff might be more comfortable if he were allowed both to
sit and stand during the day.  Tr. 287.  Thus, the ALJ included
that portion of Dr. Hook's opinion in his hypothetical to the VE.

Accordingly, the Court concludes the ALJ did not partially
reject Dr. Hook's opinion.

**IV.   The ALJ did not err when he relied on the VE's testimony.**

Plaintiff contends the ALJ erred when he relied on the VE's
testimony that Plaintiff could perform "assembly/production" jobs
because, according to DOT definitions, those jobs require the use
of and exposure to moving equipment and machinery, which the ALJ
expressly determined Plaintiff could not tolerate.

The DOT descriptions of the light-level assembler/production
jobs identified by the VE are as follows:

> Performs repetitive bench or line assembly
> operations to mass-produce products, such as
> automobile or tractor radiators, blower wheels,
> refrigerators, or gas stoves:  Places parts in
> specified relationship to each other.  Bolts,
> clips, screws, cements, or otherwise fastens parts
> together by hand, or using handtools or portable
> power tools.  May tend machines, such as arbor
> presses or riveting machine, to perform force
> fitting or fastening operations on assembly line.
> May be assigned to different work stations as
> production needs require.  May work on line where
> tasks vary as different model of same article
> moves along line.  May be designated according to
> part or product produced.

* * *

17 - OPINION AND ORDER

> Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers:  Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines.  Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.

Dictionary of Occupational Titles Job Numbers 706.687-010 and 706.687-030.  As Plaintiff notes, each of these descriptions contains job requirements related to working with machines and power tools.

At the hearing, however, the ALJ included in his hypothetical to the VE the restriction that the claimant could not be exposed to hazardous environments, "including moving equipment, machinery or unprotected heights."  Tr. 289.  In response, the VE reduced the number of available jobs in the assembler/production category by 50% to 11,000 jobs regionally and 750,000 nationally.

The Court, therefore, finds the record reflects the ALJ specifically considered the limitation of not working with machinery or moving equipment in his hypotheticals to the VE, and the VE adjusted his testimony to this restriction by reducing the number of assembler/production jobs available in the local and national economies.  Accordingly, the Court concludes ALJ did not

18 - OPINION AND ORDER

err when he relied on the VE's testimony.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of May, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER